IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | | |
|---|---|---|
| Jermaine Haynes, Francis Crawford, | ) | C/A No. 5:21-cv-1544-SAL |
| Vinquandrae Hallman, Lashawn Martin, | ) | |
| Frederick Perry, Carey Ryant, | ) | |
| Kevin Williams, and Gregory Lihan, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Southern Carolina Waste LLC, d/b/a, | ) | |
| SC Waste, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on Plaintiffs' Motion to Dismiss Defendant's Counterclaims and Strike Certain Affirmative Defenses, ECF No. 29, Plaintiffs' Motion for Partial Summary Judgment, ECF No. 42, and Defendant's Motion for Summary Judgment, ECF No. 43. For the reasons set forth below, the court grants Plaintiffs' summary judgment motion on the issue of liability and finds Defendant violated the Fair Labor Standards Act's ("FLSA") overtime requirement. Further, the court grants Plaintiffs' Motion for Summary Judgment to the extent it requests liquidated damages. However, the court grants Defendant's summary judgment motion and applies only a two-year statute of limitations period for damages calculations. Last, the court determines Defendant is entitled to summary judgment on Plaintiff Perry's retaliation claim.

## BACKGROUND

### I. Procedural History

On May 25, 2021, Jermaine Haynes, Francis Crawford, Vinquandrae Hallman, Lashawn Martin, Frederick Perry, Carey Ryant, and Kevin Williams ("Plaintiffs")[1] filed their initial complaint in this action against Defendant Southern Carolina Waste LLC, d/b/a SC Waste ("Defendant" or "SC Waste"). [ECF No. 1]. In their complaint, Plaintiffs allege Defendant failed to pay them overtime compensation as required by § 207 of FLSA. *Id.* ¶ 1. Plaintiffs request the court award backpay, liquidated damages, attorney's fees and costs, as well as other equitable relief under the FLSA. *Id.* ¶ 2. Plaintiff Perry also proceeds individually, alleging Defendant unlawfully terminated him in retaliation for exercising his federally protected rights in violation of § 215 of the FLSA. *Id.* ¶ 3. Plaintiff Perry requests punitive damages, lost wages, liquidated damages, attorney's fees and costs, as well as any other legal, injunctive and equitable relief available under the FLSA, 29 U.S.C. § 201, *et seq.*

On June 18, 2021, Defendant filed its answer to Plaintiffs' initial complaint, which included two counterclaims—one against Plaintiff Perry alleging negligence and one against Plaintiff Crawford for an outstanding loan balance owed to Defendant. [ECF No. 6, ¶¶ 85, 95]. On July 9, 2021, Plaintiffs filed a Motion to Dismiss Defendant's two Counterclaims and Strike Certain Affirmative Defenses. [ECF No. 9]. On July 23, 2021, Defendant filed its Response to Plaintiffs' Motion to Dismiss and Strike [ECF No. 10]. Plaintiffs filed their Reply supporting its dismissal motion on July 30, 2021. [ECF No. 23].

On September 8, 2021, following the court's grant of their Consent Motion to Amend the Complaint, Plaintiffs filed their operative Amended Complaint naming an additional plaintiff, Gregory Lihan regarding their FLSA overtime pay claim. [ECF No. 26]. On September 21, 2021,

---

[1] As provided below, Plaintiffs filed an Amended Complaint adding Gregory Lihan as a plaintiff. As a result, any reference to "Plaintiffs" in this Order includes Plaintiff Lihan.

Defendant filed its Answer to the Amended Complaint. [ECF No. 27]. On October 7, 2021, Defendant filed an Amended Answer again asserting various affirmative defenses and bringing counterclaims for negligence and recovery of an allegedly unpaid loan balance. [ECF No. 28]. Plaintiffs Renewed their Motion to Dismiss Defendant's Counterclaims and Strike Certain Affirmative Defenses on October 12, 2021. [ECF No. 29]. On October 25, 2021, Defendant filed its Response in Opposition to Plaintiffs' Motion to Dismiss. [ECF No. 30].

On January 31, 2022, Plaintiffs filed a Motion for Partial Summary Judgment and Defendant filed a Motion for Summary Judgment. [ECF No. 42; ECF No. 43]. On February 14, 2022, Plaintiffs filed a Motion to Strike Answers to Interrogatories and Select Summary Judgment Exhibits while also filing their Response to Defendant's summary judgment motion. [ECF No. 44; ECF No. 45]. On the same day, Defendant filed its response in Opposition to Plaintiffs' Motion for Summary Judgment. [ECF No. 46]. Both parties filed Replies on February 22, 2022. [ECF No. 47; ECF No. 48]. On February 28, 2022, Defendant filed its response to Plaintiffs' Motion to Strike Answers to Interrogatories and Select Summary Judgment Exhibits, [ECF No. 50], to which Plaintiffs replied on March 7, 2022, [ECF No. 53].

On July 6, 2022, the court entered an Order granting Plaintiffs' Motion to Strike Defendant's Amended 26.03 Responses and Select Summary Judgment Exhibits, in part by limiting the evidence in Defendant's Rule 26.03 responses and summary judgment exhibits to include only affidavits and testimony of Russ Taylor, owner of Taylor Pallets & Recycling, Inc. ("Taylor Pallets") and Jim Pratt of Sunshine Recycling, LLC ("Sunshine Recycling"). [ECF No. 62].[2] *Id.*

---

[2] The court struck the other named witnesses, their affidavits, and references to them in Defendant's 26.03 responses and summary judgment motion: Gerald Davies (Intelligent Lifecycle Solutions, LLC), Doug Nelson (Sims Bark Co. of Georgia, LLC), Sonoco Recycling, LLC, Prime Materials Recovery Inc., Liberty Tire Recycling, LLC, and Charleston Steel and Metal Company. [ECF No. 62].

All pending motions have been fully briefed and are ripe for consideration by this court.

## II. Relevant Undisputed Facts

Plaintiffs are current or former drivers for Defendant, SC Waste, who allege they worked overtime hours without overtime pay. [ECF No. 26, ¶ 1]. Additionally, Plaintiff Perry proceeds individually, alleging Defendant fired him for exercising his rights under FLSA. *Id.* ¶ 3. Defendant is a waste hauling company based in Orangeburg, South Carolina. *Id.* ¶ 15; [ECF No. 28, ¶ 15]. Greg Sutcliffe is Defendant's sole owner. [ECF No. 42-2, Sutcliffe Depo., pp. 19:5, 30:5–11, 31:1–9, 44:4–11]. Defendant's gross sales for its services approximated 5 million dollars in 2021. *Id.* at p. 43:9–12. Greg Sutcliffe also owns and manages SC Mulch. *Id.* at p. 19:3–5.

Defendant's business primarily involves delivering empty 22-foot-long dumpsters to its customers and removing and replacing them once they are full. [ECF No. 42-2, Sutcliffe Depo., pp. 26:3–27:23]. In addition to this trash service, Defendant offers its customers a recycling program in which it hauls materials such as concrete, cardboard, plastic, wood, and tires. *Id.* at pp. 42:18–43:1. If the materials cannot be recycled, Defendant hauls them to the Orangeburg landfill two doors down from its property. *Id.* at p. 43:2–8. If the materials can be recycled, Defendant takes them to various vendors, including Sunshine Recycling and Taylor Pallets. [ECF No. 43-10, ¶¶ 6, 7]. Defendant supplies Sunshine Recycling various "metal goods" which are then transported to Nucor where they "are melted down and distributed to customers throughout the United States including outside the State of South Carolina." [ECF No. 43-13, p. 4].

Defendant supplies Taylor Pallets with wood products and wood pallets. [ECF No. 42-2, Sutcliffe Depo., p. 113:19–24]. The wood products are ground into mulch by Taylor Pallets and then purchased by SC Mulch and other customers. *Id.* at pp. 19:3–5, 113:19–24. Defendant delivers roughly six to seven hundred wood pallets to Taylor Pallets' Orangeburg, South Carolina

location a week, which are then restacked, reloaded, and shipped by Taylor Pallets to its Winder, Georgia location. [ECF No. 43-3, ¶¶ 7–9]. Russ Taylor, owner of Taylor Pallets, provides affidavit testimony the pallets are immediately transported to Taylor Pallets' Winder, Georgia location because "the Orangeburg location does not have storage capabilities." *Id.* ¶ 10. Defendant supplies its wood pallets product to Taylor Pallets to avoid charging its customers fees associated with dropping them off at the Orangeburg landfill. [ECF No. 46-1, Sutcliffe Depo., p. 115:1–9].

Prior to May 17, 2021, Defendant, maintaining it was exempt from paying overtime, did not pay its drivers overtime premium for the excess hours they spent hauling waste for Defendant's customers. *Id.* at pp. 81:15–82:3. Defendant based its position on Mr. Sutcliffe's prior work experience in the transportation industry and his independent Google and U.S. Department of Labor ("DOL") website research. [ECF No. 43-2, Sutcliffe Depo., p. 153:9–20]. According to Defendant, it changed its overtime policies following a meeting with its drivers on, or around, May 13, 2021.[3] *Id.* at pp. 98:22–99:4]. During his deposition, Mr. Sutcliffe described the change in policy as an attempt to offer the drivers a better package. *Id.* at pp. 97:9–98:3.

According to the Declaration of Plaintiff Perry, on Friday, May 14, 2021, Plaintiff Perry started his shift around 3:00 or 4:00 a.m. and worked until around 11:00 p.m. [ECF No. 45-1, ¶ 3]. While driving through the Orangeburg landfill gate, Plaintiff Perry inadvertently clipped the gate and destroyed it. *Id.*; *see also* [ECF No. 43-13]. Plaintiff Perry did not immediately realize he hit the gate, but a co-worker driving behind him called and informed him. Instead of immediately notifying Defendant's management of the accident, Plaintiff Perry decided to wait until the next

---

[3] The record provides conflicting dates—May 13 or May 14, 2021—as to when the drivers meeting occurred. [ECF No. 43-1, p. 19, n. 1]. As both parties acknowledge the meeting was on a Thursday, and the court may take judicial notice that May 13, 2021 was a Thursday, the court uses the May 13, 2021 drivers meeting date herein. *See* Fed. R. Evid. 201.

day to inform them. [ECF No. 45-1, ⁋ 3]. At 1:58 p.m. the following day, Saturday, May 15, 2021, one of Defendant's managers texted the drivers asking if anyone hit the gate. [ECF No. 43-8, p. 2]. Plaintiff Perry responded he believed his truck hit the gate, but he did not hear the impact. *Id.* Defendant's disciplinary policies provide the failure "to immediately report accidents, injuries, [or] incidents" constitutes a severe offense warranting termination. [ECF No. 43-6, p. 2]. On May 17, 2021, Greg Sutcliffe fired Plaintiff Perry. [ECF No. 45-1, ⁋ 5].

Plaintiffs bring this action alleging they are owed backpay and liquidated damages for uncompensated overtime pay. [ECF No. 26, ⁋⁋ 1, 2]. Plaintiffs seek the following damages:[4]

| PLAINTIFF | OVERTIME HOURS | RATE OF PAY | BACKPAY |
|---|---|---|---|
| Jermain Haynes | 357 | $17/hour | $3,034.50 |
| Francis Crawford | 630 | $18/hour | $5,670.00 |
| Vinquandrae Hallman | 179 | $17/hour | $1,521.50 |
| Gregory Lihan | 294 | $24/hour | $3,528.00 |
| Lashawn Martin | 992 | $15/hour for 127 hours $18/hour for 865 hours | $8,737.50 |
| Kevin Williams | 2,536 | $17/hour for 937 hours $18/hour for 1,599 hours | $22,355.50 |

---

[4] The court produced the above table from the Declarations of each Plaintiff and accompanying payroll records. *See* [ECF Nos. 42-5, 42-6, 42-7, 42-8, 42-9, 42-10, 42-11, 42-12]. However, there remains a dispute as to how many hours of overtime Plaintiff Lihan worked. Defendant inadvertently left out Lihan's payroll records in its initial round of discovery but later provided it to Plaintiffs after realizing its mistake. *See* [ECF No. 46, p. 4 n.1]. According to Defendant, Lihan worked "exactly 277.5 hours of alleged overtime hours." *Id.* However, Plaintiffs allege Lihan worked 294 overtime hours. [ECF No. 48, p. 3]. Neither party has filed Lihan's payroll records on the docket, nor has Lihan provided an updated Declaration. However, Defendant failed to refute Plaintiffs' claim in a surreply and, therefore, the court considers the number of hours to be 294 for the purposes of this motion.

6

| Carey Ryant | 124 | $17/hour | $1,054.00 |
| Frederick Perry | 203 | $18/hour | $1,827.00 |
| **TOTALS** | 5,175.5 | | $47,728.00 |

# LEGAL STANDARD

## I. Fed. R. Civ. P. 12(b)(1) Dismissal Standard

Motions to dismiss under Federal Rule of Civil Procedure 12(b)(1) require the court to determine whether it has jurisdiction to adjudicate the matter before it. Fed. R. Civ. P. 12(b)(1); *see also Hoblick v. United States*, 526 F. Supp. 3d 130, 132 (D.S.C. 2021) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 507 (2006)). "When a Rule 12(b)(1) motion challenge is raised to the factual basis for subject matter jurisdiction, the burden of proving subject matter jurisdiction is on the plaintiff." *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). "A federal court has ancillary jurisdiction over compulsory counterclaims, but it cannot entertain permissive counterclaims unless they independently satisfy federal jurisdictional requirements." *Whigham v. Ben. Fin. Co. of Fayetteville, Inc.*, 599 F.2d 1322, 1323 (4th Cir. 1979) (citations omitted).

## II. Summary Judgment Standard under Fed. R. Civ. P. 56

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. American Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the

initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party makes this threshold demonstration, the non-moving party may not rest upon mere allegations or denials averred in the pleading, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing a genuine issue for trial. *See* Fed. R. Civ. P. 56; *see also Celotex Corp*., 477 U.S. at 323. A party asserting a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). A litigant is unable to "create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc*., 947 F.2d 115, 119 (4th Cir. 1996).

"When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (citing *Philip Morris, Inc. v. Harshbarger*, 122 F.3d 58, 62 n.4 (1st Cir. 1997)). "[T]he court must take care to 'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion." *Id.* (citations omitted).

## DISCUSSION

The court's analysis of the motions at hand first addresses Plaintiffs' earlier-filed Motion to Dismiss and Strike, [ECF No. 29]. The court turns thereafter to consideration of the parties' cross-motions for summary judgment, [ECF Nos. 42, 43].

## I. Plaintiffs' Motion to Dismiss

In their Motion to Dismiss, Plaintiffs argue the court should dismiss Defendant's state law counterclaims for negligence and recovery of an alleged unpaid loan balance because the counterclaims are permissive, not compulsory; thus, the court lacks jurisdiction to adjudicate them. The court agrees.

"[F]ederal courts are courts of limited jurisdiction and thus do not have authority to resolve a dispute unless that authority has specifically been given to them." *Peabody Holding Co., LLC v. United Mine Workers of Am., Intern. Union, Unincorporated Ass'n*, 815 F.3d 154, 159 (4th Cir. 2016) (citing *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 432 (4th Cir. 2014)). "A federal court has ancillary jurisdiction over compulsory counterclaims, but it cannot entertain permissive counterclaims unless they independently satisfy federal jurisdictional requirements." *Whigham*, 599 F.2d at 1323. Compulsory counterclaims "arise[] out of the same transaction or occurrence that is the subject matter of the opposing party's claim" and "[do] not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a). Counterclaims not fitting the compulsory counterclaim criteria are permissive. Fed. R. Civ. P. 13(b) ("A pleading may state as a counterclaim against an opposing party any claim that is not compulsory."). In *Painter v. Harvey*, the Fourth Circuit provided a four-pronged inquiry to determine whether counterclaims are compulsory:

> (1) Are the issues of fact and law raised in the claim and counterclaim largely the same? (2) Would res judicata bar a subsequent suit on the party's counterclaim, absent the compulsory counterclaim rule? (3) Will substantially the same evidence

support or refute the claim as well as the counterclaim? and (4) Is there any logical relationship between the claim and counterclaim?

863 F.2d 329, 331 (4th Cir. 1988) (citing *Sue & Sam Mfg. Co. v. B-L-S Const. Co.*, 538 F.2d 1048 (4th 1976)). "A court need not answer all these questions in the affirmative for the counterclaim to be compulsory." *Id.* (citations omitted). "Rather, the tests are less a litmus, more a guideline." *Id.* Applying these guidelines here, the court finds they weigh in favor of finding Defendant's counterclaims permissive.

Regarding the first guidepost, Plaintiffs' FLSA claims and Defendant's South Carolina common law counterclaims raise largely different questions of law and fact. Plaintiffs' FLSA claims concern (1) whether Plaintiffs are due unpaid overtime compensation under FLSA, i.e., whether they worked more than 40 hours in a week without overtime pay, and (2) whether Plaintiff Perry engaged in FLSA-protected activity prior to his termination. *See Hall v. DIRECTV, LLC*, 846 F.3d 757, 777 (4th Cir. 2017); *see also Darveau v. Detecon, Inc.*, 515 F.3d 334, 340 (4th Cir. 2008). In contrast, Defendant's counterclaims are governed by South Carolina common law. The negligence counterclaim raises different questions from Plaintiffs' FLSA claims, such as whether Plaintiff Perry owed Defendant a duty, whether he breached that duty, and whether the alleged breach proximately caused resulting damages to Defendant. *See Fettler v. Gentner*, 722 S.E.2d 26, 29 (S.C. Ct. App. 2012). For its part, Defendant's unpaid loan counterclaim against Plaintiff Crawford raises distinct questions of the existence of a loan agreement, its terms, and its alleged breach. As such, the first guideline weighs in favor of finding Defendant's counterclaims permissive, rather than compulsory.

Moreover, the court finds consideration of the counterclaims against the second inquiry weighs in favor of finding the counterclaims are permissive, as the doctrine of res judicata would *not* bar

10

Defendant's claims in a subsequent suit. "The doctrine of res judicata provides that final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were or could have been raised in that action." *Venture Engineering, Inc. v. Tishman Const. Corp. of S.C.*, 600 S.E.2d 547, 550 (S.C. Ct. App. 2004) (citations omitted). "To establish res judicata, the defendant must prove the following three elements: (1) identity of the parties; (2) identity of the subject matter; and (3) adjudication of the issue in the former suit." *Id.*

Viewing the well-pleaded allegations at hand in the light most favorable to Defendant, the court finds the second and third elements of res judicata unmet. Regarding the second element of identify of subject matter, again, the parties will not have to adjudicate questions of negligence or issues concerning the alleged outstanding loan balance to resolve Plaintiffs' FLSA claims. Defendant's arguments which form the bases for the counterclaims can still be argued as defenses and do not require the court to issue a final order on their merits. Nor will Defendant be precluded from bringing the counterclaims in a subsequent action. The second prong of the *Painter* compulsory counterclaim analysis suggests Defendant's counterclaims are permissive.

On the third inquiry of whether "substantially the same evidence [will] support or refute the claims as well as the counterclaims," the court finds it will to an extent. While there is overlap as to some of the claims and counterclaims, Defendant's counterclaims require additional evidentiary support. As Defendant argues in its Response, Plaintiffs' overtime claims rely on employee payrolls. [ECF No. 30, p. 9]. Defendant further argues "[i]f deductions were taken from Plaintiff Crawford's payroll due to the loan between [them], then this fact will be part of the overall claim established by . . . Crawford." *Id.* Defendant contends "[s]ubstantially the same evidence will support the counterclaim of negligence while at the same time refuting Plaintiff Perry's claim for

retaliation because [it] will submit evidence showing the timeline of Plaintiff's destruction of the gate and his termination from SC Waste." *Id.* at p. 10. The court agrees some similarity exists between the evidence required to prove and refute the claims and counterclaims.

To prove its negligence counterclaim, Defendant must establish damages proximately caused by Plaintiff Perry's negligence, which are not otherwise at issue in this case. Furthermore, as Defendant does not specify under which theory of recovery it intends to collect the outstanding loan balance, the court cannot say for certain whether the same evidence is required to prove an offset for recovery under Plaintiff Crawford's overtime claim. Ultimately, some of the same evidence may overlap between Plaintiffs' FLSA claims Defendant's state law counterclaims, but the counterclaims will likely need additional evidentiary support. Therefore, the third inquiry weighs slightly in favor of finding Defendant's counterclaims compulsory.

Regarding the *Painter* test's logical relationship guideline, Defendant argues the outstanding loan balance logically relates to Plaintiffs' overtime claims "as this dispute revolves around pay that is allegedly due to Plaintiff Crawford" and between its negligence claim and Plaintiff Perry's retaliation claim because it "will show that his termination was not in fact a retaliatory action but instead due to [his] negligent act." [ECF No. 30, p. 10]. Though related, the counterclaims most logically relate to the claims as *defenses* against Plaintiffs' claims, not *independent claims*. Common law negligence claims and an action to recover a loan debt simply do not arise out of the same transaction or occurrence as Plaintiffs' FLSA claims for failure to pay overtime and unlawful retaliation. *See Alley v. Quality Eco Techs., LLC*, No. 3:20-CV-355, 2021 WL 1196188, *14 (E.D. Va. 2021) ("While the Installer's claims seek minimum wage and overtime payments for the hours the Installers allegedly worked, QET's Counterclaims seek compensation for allegedly negligent

work, fraudulent job invoices, and defamation almost entirely unrelated to the Installers' FLSA claims.") The employer-employee relationship alone cannot provide the basis for logical relationship between claims and counterclaims. *Id.* Here, the fourth prong counsels finding the counterclaims permissive.

Accordingly, three out of the four *Painter* guidelines indicate Defendant's counterclaims are permissive. Without an independent basis for jurisdiction over these counterclaims, the court must therefore grant Plaintiffs' motion to dismiss them under Rule 12(b)(1).[5]

## II. Plaintiffs are Entitled to Overtime Pay and Liquidated Damages Under the FLSA.

Turning now to the parties' cross motions for summary judgment on Plaintiffs' FLSA claims, the court first considers the threshold question of whether, despite undisputedly working over forty hours a week without overtime pay, Plaintiffs nevertheless are unentitled to FLSA overtime protections based on the FLSA's Motor Carrier Act exemption. The court finds the Motor Carrier Act exemption inapplicable here, and determines Defendant's violations constitute unreasonable, but not reckless or willful, conduct entitling Plaintiffs to backpay and liquidated damages over a two-year limitations period.

### A. Plaintiffs are Non-Exempt Employees Entitled to Overtime Compensation

In its summary judgment briefing, Defendant does not dispute Plaintiffs regularly worked more than forty hours per week without any overtime premium. Instead, Defendant argues the Motor

---

[5] In their Motion, Plaintiffs also ask the court to strike various affirmative defenses made by Defendant in its Amended Answer. However, as discussed below, the court finds Plaintiffs are entitled to overtime compensation as a matter of law and grants their summary judgment motion. Consequently, the court denies Plaintiffs' Motion to Strike as moot.

Carrier Act exempts Plaintiffs from the FLSA's overtime requirement. Plaintiffs argue the Motor Carrier Act exemption does not apply to their FLSA claims here, and the court agrees.

Section 207 of the FLSA provides employees who work more than forty hours per week are entitled to overtime compensation. 29 U.S.C. § 207. Section 213, however, creates exemptions to the overtime requirement. *See id.* § 213. One of these exemptions covers "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provision of section 31502 of Title 49. *Id.* § 213(b)(1). This exemption is often referred to as the "motor carrier exemption," which Defendant argues exempts it from paying Plaintiffs overtime under the FLSA. Because this exemption constitutes an affirmative defense, Defendant has the burden of proving this exemption applies. *See Clark v. J.M. Benson Co., Inc.*, 789 F.2d 282, 286 (4th Cir. 1986) (citations omitted).

To carry its burden, Defendant must show Plaintiffs (1) worked "for a private motor carrier that provides transportation in interstate commerce and (2) whose work activities affect the 'safety of operation' of that motor carrier." *Troutt v. Stavola Bros., Inc.*, 107 F.3d 1104, 1106–07 (4th Cir. 1997). However, the record shows Plaintiffs only traveled within South Carolina and never crossed state lines.[6] *See* [ECF No. 42-2, Sutcliffe Depo., p. 137:15]; *see also* 49 U.S.C. § 13501 (defining in relevant part interstate commerce as requiring transit through another state). As such, unless Plaintiffs engaged in intrastate commerce which contributed to a "continuous stream of interstate travel," the Motor Carrier Act exemption will not apply. *See* 29 C.F.R. § 782.7 (2022) (quoting

---

[6] The parties do not dispute Defendant is a motor carrier and Plaintiffs, as drivers, affected the safety of the operation of their vehicles. Instead, the parties solely focus on whether Plaintiffs engaged in interstate commerce.

*Morris v. McComb*, 332 U.S. 422, (1947)); *see also Walters v. Am. Coach Lines of Miami, Inc.*, 575 F.3d 1221, 1229 (11th Cir. 2009) ("As a result, purely intrastate transportation can constitute part of interstate commerce if it is part of a 'continuous stream of interstate travel.'") (citations omitted).

"'The question whether commerce is interstate or intrastate must be determined by the essential character of the commerce....'" *Veney v. John W. Clarke, Inc.*, 28 F. Supp. 3d 435, 443 (D. Md. 2014) (quoting *Atlantic Coast Line Ry. Co. v. Standard Oil Co. of Kentucky,* 275 U.S. 257, 268, (1927)). "'[T]he essential nature of the traffic as a through movement to the point of ultimate destination [may be] shown by the original and persisting intention of the shippers which was carried out.'" *Id.* (quoting *Baltimore & O.S.W.R. Co. v. Settle,* 260 U.S. 166, 173–74 (1922)). In that regard, the former Interstate Commerce Commission has found "'the fixed and persisting intent' of the shipper" constitutes an "essential characteristic" of interstate commerce. *Id.* at 443–44 (citations omitted). Conversely, mere "engagement in local transportation which is entirely in intrastate commerce provides no basis for exempting a motor carrier employee." *Id.*; *see also* 29 C.F.R. § 782.7 (2022).

A close look at the summary judgment record shows Plaintiffs did *not* engage in interstate commerce, and the court finds no evidence of a persistent or fixed intent that Plaintiffs' intrastate activities contribute to a "continuous stream of interstate travel." Defendant's waste hauling service, which required Plaintiffs to drop off empty dumpsters, return and replace once full, and haul the waste to the Orangeburg landfill, was purely an intrastate activity. [ECF No. 42-2, Sutcliffe Depo., pp. 26:3—27:23].

Moreover, there is no evidence in the record indicating Plaintiffs' intrastate travel for Defendant's recycling services for Sunshine Recycling or Taylor Pallets contributed to a stream of interstate commerce. In that regard, Defendant provides no evidence of how much metal it supplies Sunshine Recycling, how long Sunshine Recycling holds onto the material before shipping it to Nucor, the location of Nucor's facility, or to what customers Nucor sells its altered product. Because Defendant does not (perhaps cannot) provide such information, the court finds Defendant fails to establish interstate commerce through its recycling activities with Sunshine Recycling.

Defendant relies more heavily on its relationship with Taylor Pallets and provides detailed information of its supply of wood products and wood pallets to Taylor Pallets as evidence Plaintiffs engaged in interstate commerce. *See* [ECF No. 43-1, p. 10; ECF No. 47, p. 4]. Defendant acquires both products from its paying customers and supplies them to Taylor Pallets free of charge. ECF No. 46-1, Sutcliffe Depo., p. 115:1–12]. The court finds Defendant did not have a fixed and persistent intent that its customers' wood products would travel in interstate commerce. While testifying as Defendant's 30(b)(6) representative, Mr. Sutcliffe testified SC Waste engaged in the process of creating mulch from the wood products because "we, SC Waste, takes [sic] product into Taylor Pallets and Taylor Pallets own the grinders. They shred it and then SC Mulch buys back the mulch from Taylor Pallets." [ECF No. 43-2, Sutcliffe Depo., p. 38:6–25]. Therefore, the only fixed and persistent intent of Defendant is to return the wood products—now mulch—back to South Carolina and *not* to have it continue in the stream of interstate commerce.

Likewise, Defendant fails to show Plaintiffs engaged in interstate commerce when they delivered pallets from Defendant's customers to Taylor Pallets' Orangeburg, South Carolina facility, notwithstanding the fact the pallets are ultimately shipped to Georgia. Whether intrastate

16

transportation constitutes interstate commerce relies on the shipper's fixed and persistent intent the product continues in interstate transit. *See Veney*, 28 F. Supp 3d at 443–44 (citations omitted). The Fourth Circuit has provided guidance in analyzing whether "interstate continuity of transit" is present: "the intention of the owner, the control he retains to change destination, the agency by which the transit is effected, the actual continuity of the transportation, and the occasion or purpose of the interruption." *Atlantic Coast Line R. Co. v. Standard Oil Co. of N.J.*, 12 F.2d 541, 547 (4th Cir. 1926) (quoting *Champlain Realty Co. v. Town of Brattleboro, Vermont*, 260 U.S. 366, 377 (1922)). Under the five-prong test to determine whether Defendant's supply of wood pallets contributed to a stream of interstate commerce, Defendant fails to meet its burden.

First, Defendant hauls the wooden pallets to Taylor Pallets to avoid charging his customers for dropping them off at the landfill. [ECF No. 46-1, Sutcliffe Depo., p. 115:1–12 (discussing Defendant's derived benefit from hauling the pallets to Taylor Pallets)]. There is no evidence suggesting Defendant supplies the pallets with an intent for them to continue in commerce until they are sold. Rather it supplies them with the intention to ensure amiable business relationships. Second, Defendant fails to provide any evidence suggesting it maintains any control of the pallets once they are delivered to Taylor Pallets. Russ Taylor, owner of Taylor Pallets, testified the pallets are transported to Georgia because it lacks room for the pallets at the South Carolina facility. [ECF No. 42-15, ¶ 10]. Third, the record contains no evidence providing how the pallets are transported to Georgia nor indicating Taylor Pallets' drivers engage in interstate commerce regulated by the Secretary of Transportation.[7] Fourth, even though the evidence in the record shows the pallets are,

---

[7] Not all motor carrier drivers are exempt from FLSA's overtime requirements. For example, if a driver operates a vehicle weighing 10,000 pounds or less, then they are still entitled to overtime under FLSA. *See Buckner v. Buckner v. United Parcel Serv., Inc.*, No. 5:09-CV-411-BR, 2012 WL 1596726, at *4 (E.D.N.C. May 7, 2012), *aff'd*, 489 F. App'x 709 (4th Cir. 2012) (discussing the

in fact, shipped from South Carolina to Georgia, it does not contain evidence showing they continue or are intended to continue in the stream of interstate commerce. Fifth, the evidence in the record shows the purpose of the interruption (dropping off the pallets at Taylor Pallets) is to supply Taylor Pallets with free pallets so Defendant can avoid unnecessary landfill charges it would have to pass on to its customers. [ECF No. 46-1, Sutcliffe Depo., p. 115:1–12]. Defendant does not offer any evidence suggesting the pause in transit is incidental to its intention the pallets continue in interstate transit. None of the five factors support finding Defendant has a fixed and persisting intent the wood pallets continue in interstate commerce, and, therefore, the court finds Defendant fails to satisfy its burden required to exempt Plaintiffs from FLSA's overtime requirements.[8]

Finally, although not dispositive, the court additionally notes Defendant represents itself as an intrastate-only carrier. While the nuances of the motor carrier exemption require the court to determine whether Plaintiffs engaged in interstate commerce, the plain text of the statute shows a general congressional intent to exempt those employees already facing regulations from the Secretary of Transportation. *See* 29 U.S.C. § 213(b)(1) ("any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service").

---

effects of the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users, Pub. L. No. 109–59, § 4142, 119 Stat. 1144, 1747 (2005)).

[8] Alternatively, if this activity does constitute interstate commerce, the court finds its reach *de minimis* and insufficient to trigger the motor carrier exemption. *See Linnville v. RW Properties*, No. 6:13-cv-00542-BHH, 2015 WL 196372, at *4 (D.S.C. Jan. 15, 2015). Defendant's gross sales for its trash and recycling services approximated 5 million dollars in 2021. [ECF No. 42-2, Sutcliffe Depo., p. 43:9–12]. Mr. Sutcliffe testified Defendant does not receive compensation from Taylor Pallets for its supply of pallets, but instead it avoids charging its clients to drop them off at the landfill. [ECF No. 46-2, Sutcliffe Depo., p. 115:1–12]. Considering the extent of Defendant's business, the court cannot say that Defendant's supply of pallets to *one* customer sufficiently transforms its activities from intrastate to interstate. Consequently, Defendant still fails to meet its burden of proof required to show Plaintiffs are exempt employees under the FLSA.

However, Defendant's own representations to its employees show it does not believe it is subject to the Secretary of Transportation's regulations. *See* [ECF No. 42-17]. Defendant's formal break policy provides

> SC WASTE is an Intrastate Short Haul Exemption Carrier. Therefore, you as the driver, do not have to operate any form of Logging Devices for your Hours of Service. However, National Statistics show Transportation Carriers have had less accidents in the accident ratios after the Federal Motor Carrier Safety Administration implemented the regulation of Thirty (30) Minute Break before the Eighth (8) Hour of driving time. SC WASTE is adding this policy for the driver employees to take a Thirty (30) Minute Break for Safety and Wellness ***for you, the driver***.

*Id.* (emphasis added).

For the reasons outlined above, the court determines no reasonable jury could find Plaintiffs engaged in interstate commerce so as to exempt them from the overtime requirements provided by FLSA. The court therefore finds Defendant's undisputed failure to pay Plaintiffs overtime is a violation of § 207(a) of the FLSA. Thus, the court grants Plaintiffs' summary judgment motion and denies Defendant's summary judgment motion on Count I of Plaintiffs' Amended Complaint for failure to pay overtime in violation of Section 7(a) of the FLSA, 29 U.S.C. § 207(a).

### B. Damages for FLSA Overtime Pay Violation

#### 1. Defendant Did Not Willfully Violate FLSA.

Upon finding Defendant violated the FLSA's overtime pay requirements, the court turns next to the parties' FLSA damages-related arguments. In that regard, Plaintiffs argue Defendant's failure to pay them overtime constitutes a "willful violation" of the FLSA entitling them to an extended three-year statute of limitations period. However, Plaintiffs have not met their burden of proving Defendant acted knowingly or recklessly with respect to its overtime pay policy.

The FLSA provides a general two-year statute of limitations "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). "[O]nly those employers who 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]' have willfully violated the statute." *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 358 (4th Cir. 2011) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). Mere negligence or conduct based "on a completely good-faith but incorrect assumption that a pay plan complied with the FLSA in all respects" is not willfulness. *McLaughlin*, 486 U.S. at 133–35. Additionally, an employer's unreasonable FLSA violation is not also willful if its conduct was not reckless. *See id.* at 135 n.13. "[T]he employee bears the burden of proof when alleging a violation is willful." *Desmond*, 630 F.3d at 358 (quoting *McLaughlin*, 486 U.S. at 135).

According to Plaintiffs, Defendant "took *no action* to ascertain the requirements of the FLSA" and "the only basis for determining that the employees were not covered by the FLSA was a letter and email stating the DOL was going to investigate their worksite in April 2021." [ECF No. 42-1, p. 26]. Plaintiffs further assert "Defendant never contacted an attorney and never got a legal opinion" and merely based its determination on his previous employment with Staley Transport more than 30 years ago, showing reckless disregard. *Id.* at pp. 27, 29. Finally, Plaintiffs also fault Defendant for self-designating as an intrastate-only carrier only to then disingenuously argue it engages in a slight bit of interstate commerce. *Id.*

Despite Plaintiffs' claims to the contrary, the record *does* contain evidence Defendant took *some* steps in setting its overtime policy. Mr. Sutcliffe testified he based his decision not to pay overtime

> Just from my knowledge over the years back when I worked for Staley Transport and what it meant for interstate commerce that was traveling on out of state, we didn't pay overtime then, and, you know, with the records I got on the computer, Googled U.S. Department of Labor, things like that, that says as long as you are in the stream of commerce.

[ECF No. 46-1, Sutcliffe Depo., p. 153:9–16]. The Department of Labor website reviewed by Mr. Sutcliffe states "[d]rivers, driver's helpers, loaders and mechanics are exempt from the overtime pay provisions of the FLSA if employed by a motor carrier, and if the employee's duties affect the safety of operation of the vehicles in transportation of passengers or property in interstate or foreign commerce." *Id.* (citing [ECF No. 46-11, p. 29]). The webpage also provides a link to review the applicable federal regulation. *Id.* It is reasonable that Mr. Sutcliffe believed this to be sound advice given the website's description as a "compliance assistance resource[]" prepared by "elaws Advisors." [ECF No. 46-11, p. 29]. Considering the above, no reasonable jury could find Defendant willfully, or recklessly, disregarded FLSA's overtime requirements. Consequently, the court denies Plaintiffs' motion for summary judgment and grants Defendant's motion for summary judgment on the issue of willfulness.

The court next addresses Plaintiffs' related request for liquidated damages based on the separate argument Defendant's violation of the FLSA for failure to pay overtime was not reasonable or in good faith.

### 2. Plaintiffs Are Entitled to Liquidated Damages.

Next, Plaintiffs request liquidated damages for Defendant's FLSA overtime pay violations, which Plaintiffs allege were unreasonable and not in good faith. The court agrees Plaintiffs are entitled to liquidated damages here.

FLSA provides "[a]ny employer who violates the provisions of Section . . . 207 of this title shall be liable to the employee or employees affected in the amount of . . . their unpaid overtime

compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216. However, Congress clarified in the Portal-to-Portal Act "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" the court may refuse to award liquidated damages or award a lesser amount. 29 U.S.C. § 260. "Good faith in this context requires more than remaining blissfully ignorant of FLSA requirements and taking an ostrichlike approach to FLSA." *Braxton v. Jackson*, 782 F. App'x 240, 245 (4th Cir. 2019) (quoting *Roy v. Cnty. Of Lexington*, 141 F.3d 533, 548-49 (4th Cir. 1998)). Defendant has the burden of proving it acted in good faith. *See Regan v. City of Charleston*, 131 F. Supp. 3d 541, 554 (D.S.C. 2015) (citations omitted).

The parties rely on their willfulness arguments to support their respective positions on the issue of liquidated damages. The court previously determined Defendant did not willfully violate FLSA. However, just as the Supreme Court indicated in *McLaughlin*, an employer can act unreasonably but not recklessly. *See* 486 U.S. at 135 n.13. While Defendant took *some* steps to justify its decision not to pay an overtime premium, reliance on those steps alone was not reasonable.

First, Mr. Sutcliffe's reliance on a prior employer's exempted status fails to establish reasonable grounds for Defendant's pay policy. Mr. Sutcliffe testified he "[m]anaged their trucking that actually hauled chips that would go to the ports" which would then be loaded onto "a ship or railcar" and taken elsewhere. [ECF No. 42-2, Sutcliffe Depo., p. 75:10–23]. This process of transporting products that were then directly shipped out of state it is fundamentally a different type of transportation than Defendant's wholly intrastate trash and recycling services.

22

Second, Mr. Sutcliffe's google search also fails to establish a reasonable basis for Defendant's FLSA violations. Mr. Sutcliffe did *some* research. The record fails to show, however, the extent or quality of the research. The record does not show he retained legal counsel, nor that he read the relevant regulations and statutes. Such failures amount to unreasonableness. *See McFeeley v. Jackson St. Ent., LLC*, 825 F.3d 235, 245 (4th Cir. 2016) (finding unreasonableness where employer "made no effort to look into the law or seek legal advice until he faced a lawsuit").

Likewise, Defendant cannot rely on the fact that no violations have been issued by the Department of Labor to support a finding of good faith and reasonableness. As Plaintiffs point out, the Department of Labor has not found Defendant had not committed any violation. [42-1, p. 26]. We have only silence from the Department of Labor. The court finds this woefully unpersuasive of reasonableness.

As such, the court finds Defendant has failed to carry its burden to show good faith and reasonableness. Therefore, Plaintiffs are entitled to an award of liquidated damages, as is the norm. *See Mayhew v. Wells*, 125 F.3d 216, 220 (4th Cir. 1997). Consequently, the court grants Plaintiffs' summary judgment motion and denies Defendant's summary judgment motion on the issue of liquidated damages.

### III. Plaintiff Perry Fails to Rebut Defendant's Proffered Nonretaliatory Justification

The court next considers the remaining issue of whether Defendant is entitled to summary judgment on Plaintiff Perry's FLSA retaliation claim. Plaintiff Perry proceeds individually in Count Two of the Amended Complaint, bringing charges against Defendant for retaliation in violation of § 215(a)(3) of FLSA. [ECF No. 26, ¶¶ 39–43]. Section 215 of FLSA makes it unlawful for any person

> (3) to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee[.]

29 U.S.C. § 215. This provision "effectuates enforcement of the Act's substantive provisions by removing 'fear of economic retaliation' so that employees need not 'quietly . . . accept substandard conditions.'" *Darveau v. Detecon, Inc.*, 515 F.3d 334, 340 (4th Cir. 2008) (quoting *Mitchell v. Robert De Mario Jewelry, Inc.*, 361 U.S. 288, 292 (1960)).

As a threshold matter, the court first addresses the relevant legal framework for considering an FLSA retaliation claim. Plaintiff Perry argues "[a]t this summary judgment stage, the Court must follow the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." [ECF No. 45, p. 30]. For its part, Defendant does not explicitly cite *McDonnell Douglas*, but Defendant uses relevant language from the burden-shifting framework by arguing its justification for firing Plaintiff Perry is not pretextual. [ECF No. 47, p. 8]. Typically, the *McDonnell Douglas* framework is applied in cases where "the plaintiff produces no direct or circumstantial evidence of discrimination sufficient to warrant a 'mixed-motive' analysis." *Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006) (citing *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101–02 (2003)).

While the court is unaware of Fourth Circuit opinions applying the *McDonnell Douglas* framework to FLSA retaliation claims, the Fourth Circuit has applied the framework in comparable contexts. *See Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248–49 (4th Cir. 2015) (using the framework in a Title VII retaliation claim)*; Laber*, 438 F.3d at 432 (using the framework in an ADEA retaliation claim). Moreover, various district courts in the Fourth Circuit have applied the *McDonnell Douglas* framework when analyzing a FLSA retaliation claim. *See Newcomb v. City*

24

*of Newport News*, 549 F. Supp. 3d 458, 465 (E.D. Va. 2021); *see also Reardon v. Herring*, 201 F. Supp. 3d 762, 784 (E.D. Va. 2016); *Goode v. Am. Veterans, Inc.*, 874 F. Supp. 2d 430, 446 (D. Md. 2012). Following this persuasive authority, the court proceeds under the *McDonnell Douglas* framework.

Under this framework, Plaintiff Perry "must show that (1) he engaged in activity protected by the FLSA; (2) he suffered adverse action by the employer subsequent to or contemporaneous with such protected activity; and (3) a causal connection exists between the employee's activity and the employer's adverse action." *Id.* (citing *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342–43 (11th Cir. 2000). Internal complaints may constitute protected activity so long as they are "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Minor v. Bostwick Lab'ys, Inc.*, 699 F.3d 428, 439 (4th Cir. 2012) (quoting *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011)).

The only element in dispute is the first element.[9] Can Plaintiff Perry establish he engaged in activity protected by FLSA? Plaintiff Perry relies on a meeting he attended during which overtime compensation was discussed. The record shows Plaintiff Perry attended a meeting on or around May 13, 2021, with other drivers and Defendant's management to discuss issues of overtime compensation. [ECF No. 43-7, p. 4]; [ECF No. 43-2, Sutcliffe Depo., pp. 97:7–98:21]. Testifying as Defendant's 30(b)(6) representative, Mr. Sutcliffe testified employees "were looking—hoping

---

[9] Although Defendant also argues there is no causal connection, that argument really seems to be a proffer of a legitimate, non-discriminatory justification for its termination of Plaintiff Perry under the *McDonnell Douglas* framework. The court treats it as such.

to get overtime pay" and after discussing it with another employee, he agreed to "have a driver meeting." [ECF No. 43-2, Sutcliffe Depo., p. 97:9–19]. During the meeting, the parties discussed receiving overtime compensation and, after the drivers expressed "that's what they really wanted," Mr. Sutcliffe agreed and started to pay an overtime premium. *Id.* at p. 98:11–21. Defendant argues this cannot constitute protected activity under the FLSA because "there was no mention of the FLSA or any other laws at this meeting and there is no indication that there was any mention of the FLSA at any time prior to the initiation of the present lawsuit." [ECF No. 43-1, p. 18].

However, Plaintiff Perry did not need to specify he sought correct overtime pay under the FLSA so long as his request sufficiently put Defendant on notice. *See Kasten*, 563 U.S. at 14. Furthermore, the Supreme Court of the United States specifically determined "[t]his standard can be met, however, ***by oral complaints***, as well as by written ones." *Id.* (emphasis added). Plaintiff Perry testified in a declaration the drivers "were upset because [they] thought [they] were supposed to be getting paid time and one half for all overtime hours like other similar drivers in South Carolina." [ECF No. 45-1, ¶ 2]. He further stated he "was the first person to speak up about wanting overtime." *Id.* The court concludes Plaintiff Perry provides sufficient evidence to state a prima facie FLSA retaliation case.

Because Plaintiff satisfied his initial burden, the burden shifts to Defendant to offer "a legitimate, non-discriminatory reason" for Plaintiff Perry's termination. *Laber*, 438 F.3d at 432. Defendant claims it fired Plaintiff Perry for failing to report an incident in which his truck inadvertently caught the Orangeburg landfill gate and destroyed it. [ECF No. 43-1, p. 20]. To support this justification, Defendant provided a copy of its disciplinary policy which states "[failure] to immediately report accidents, injuries, incidents" to Defendant's management

constitutes a "severe" violation warranting termination. [ECF No. 43-6, p. 2]. Plaintiff Perry testified after working a long shift on May 14, 2021, he drove through the gate at the Orangeburg landfill and, although he did not see or notice anything, his co-worker called and informed him his truck caught the gate and damaged it. [ECF No. 45-1, ⁋ 3]; *see also* [ECF No. 45-2, ⁋ 3].

Instead of reporting the incident immediately, Plaintiff Perry waited until one of Defendant's managers texted the drivers the next day at 1:58 pm inquiring whether any of them hit the landfill gate. [ECF No. 43-8, p. 2]. Plaintiff Perry responded he thought it was his truck but maintained he did not hear or notice anything at the time of the incident. *Id.* Defendant argues in its reply, as testified to by Mr. Sutcliffe as Defendant's 30(b)(6) deponent, Plaintiff Perry was "terminated because [he] didn't report it so we could secure the facility" and Defendant never had an employee "leave a gate open to a public landfill that was accessed and it was that dangerous." *Id.* at p. 145:15–21. The court finds this justification is valid, therefore, satisfying Defendant's burden.

Now, the burden shifts back to Plaintiff Perry to "show that the reason is false, and ultimately, that [Defendant] retaliated against him." *Laber*, 438 F.3d at 432 (citing *Beall v. Abbott Labs.*, 130 F.3d 614, 619 (4th Cir. 1997) (abrogated on other grounds)). Despite his admission he damaged the gate and failed to immediately report it, Plaintiff Perry argues Defendant's true reason for firing him was its intention "to offset any financial consequences" of choosing to pay its drivers an overtime premium. [ECF No. 45, p. 31]. To support this contention, Plaintiff Perry points to evidence suggesting drivers cause damage often and they normally are not reprimanded for doing so. [ECF No. 43-2, Sutcliffe Dep., p. 145:2–17]. However, this does not adequately address Defendant's stated reason for his termination—that is, failing to immediately *report* the damage, not causing the damage itself. Plaintiff Perry fails to provide evidence of another instance of a

driver failing to immediately report damage. And Plaintiff Perry does not demonstrate Defendant's justification for terminating him is false or pretextual.

Finally, Plaintiff Perry also argues Defendant's "decision to file a counterclaim for negligence against [him]" proves the retaliatory nature for his termination. [ECF No. 45, p. 32]. According to Plaintiff, because the negligence claim is baseless, "the only reasonable conclusion a juror could reach with these [sic] set of facts is that Mr. Sutcliffe's angry firing of [him] was retaliation for raising overtime concerns." *Id.* The court respectfully disagrees. Although the court found Defendant's negligence claim was permissive rather than compulsory, it did not pass judgment on its merits. Considering the Federal Rule's mandate that parties must bring compulsory counterclaims, and Defendant's good-faith arguments supporting its position, no reasonable juror could find its filing of a counterclaim for negligence shows pretext or falsity.

Because Plaintiff Perry fails to rebut Defendant's nondiscriminatory reason for terminating him, the court finds Defendant is, in fact, entitled to summary judgment.

## FURTHER PROCEEDINGS

The court's findings above leave open the issues of damages and attorneys' fees and costs as to Defendant. The damages issue relates only to Plaintiff Francis Crawford due to Defendant's claimed offset. The court will address these issues in a non-jury evidentiary hearing. In preparation for that hearing, the court imposes the following deadlines: (1) no later than October 17, 2022, Plaintiffs shall file and serve a memorandum addressing their position on damages and disclosing all evidence on which they intend to rely; and (2) no later than November 4, 2022, Defendant shall file a response and pretrial disclosures setting forth their positions on the evidence and law and disclosing any evidence or witnesses they intend to present. These submissions shall be limited to the issues of damages, attorney's fees and costs, as liability has been established through this order.

## CONCLUSION

For the foregoing reasons, the court **GRANTS** Plaintiffs' Motion to Dismiss Defendant's counterclaims and **DENIES as moot** Plaintiffs' Motion to Strike. [ECF No. 29]. The court **GRANTS in part** Plaintiffs' Motion for Partial Summary Judgment, ECF No. 42, and **DENIES in part** Defendant's Motion for Summary Judgment, ECF No. 43, as to unpaid overtime compensation liability under the FLSA and liquidated damages. The court **DENIES in part** Plaintiffs' Motion for Partial Summary Judgment, ECF No. 42, and **GRANTS in part** Defendant's Motion for Summary Judgment, ECF No. 43, as to willfulness. The court **GRANTS in part** Defendant's Motion for Summary Judgment, ECF No. 43, on Plaintiff Perry's retaliation claim. The Clerk of Court is **DIRECTED** to enter **JUDGMENT** according to the following chart:

| PLAINTIFF | DAMAGES AWARD (Including Actual and Liquidated Damages) |
|---|---|
| Jermain Haynes | $6,069.00 |
| Vinquandrae Hallman | $3,043.00 |
| Gregory Lihan | $7,056.00 |
| Lashawn Martin | $17,475.00 |
| Kevin Williams | $44,711.00 |
| Carey Ryant | $2,108.00 |
| Frederick Perry | $3,654.00 |
| **TOTALS** | $84,116.00 |

**IT IS SO ORDERED.**

/s/ Sherri A. Lydon_____
The Honorable Sherri A. Lydon

United States District Judge

September 30, 2022
Columbia, South Carolina